# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

LINDA S.[1],

          Plaintiff,

   v.             5:18-CV-726
                  (ATB)

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

---

STEVEN R. DOLSON, ESQ., Attorney for Plaintiff
HEATHER SERTIAL, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the parties. (Dkt. Nos. 3-4).

## I. PROCEDURAL HISTORY

Plaintiff filed an application for Disability Income Benefits ("DIB") on January 13, 2015, alleging disability beginning June 1, 2012 (Administrative Transcript ("T.") 168-175). The application was denied initially on May 11, 2015. (T. 72-83). Plaintiff requested a hearing, which was held before Administrative Law Judge ("ALJ") Paul

---

[1] In accordance with recent guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 in order to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only her first name and last initial.

Greenberg on December 16, 2017, at which plaintiff and Vocational Expert ("VE")

Suman Srinivasan testified. (T. 38-71). On April 7, 2017, ALJ Greenberg found

plaintiff was not disabled from June 1, 2012 through the date of his decision. (T.

15-25). The ALJ's decision became the Commissioner's final decision when the

Appeals Council denied plaintiff's request for review on May 10, 2018. (T. 1-3).

## II.   GENERALLY APPLICABLE LAW

### A.   Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI

disability benefits must establish that he is "unable to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than twelve months. . ." 42 U.S.C. § 1382c(a)(3)(A). In

addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he
> is not only unable to do his previous work but cannot, considering his age,
> education, and work experience, engage in any other kind of substantial gainful
> work which exists in the national economy, regardless of whether such work
> exists in the immediate area in which he lives, or whether a specific job vacancy
> exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections

404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

First, the [Commissioner] considers whether the claimant is currently

engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience.... Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step. *Id*.

## B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin, Comm'r,* 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id*. However, this standard is a very deferential standard of

review "-even more so than the 'clearly erroneous standard.' " *Brault*, 683 F.3d at 448.

To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*; *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (". . . we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony . . ."). However, the ALJ cannot " 'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.  <u>FACTS</u>

As of the date of the December 16, 2016 hearing, plaintiff was fifty-seven years old. (T. 45). She resided at home with her husband. (T. 46). Plaintiff completed high school in regular classes and obtained a bachelor's degree. (T. 47, 412). Plaintiff was

one course away from a master's degree in elementary education. (*Id*.). Plaintiff

claimed disability resulting from her fibromyalgia, chronic migraines, insomnia,

depression, anxiety, panic attacks and hypertension. (T. 173).

Plaintiff's relevant employment history includes working as a substitute

preschool teacher, and most recently, as a receptionist for a veterinary office. (T. 49-51,

54).  Plaintiff testified that she stopped working in May of 2012 due to fibromyalgia

symptoms, including, chronic pain, chronic fatigue, chronic migraines, forgetfulness,

and the inability to find words. (T. 56).

Plaintiff claimed that her "pain varie[d] day to day." (T. 57). Plaintiff testified to

having a "lot of neck and shoulder issues," as well as migraines and lower back and leg

pain. (T. 57). Plaintiff claimed no limitation in her ability to stand, and she walked

without a cane. (T. 47, 64). Plaintiff further stated that the farthest she could walk was

one to two blocks at a time, if she were given the opportunity to rest for five to ten

minutes afterwards. (T. 64). Plaintiff claimed that the heaviest thing she could lift was

her fifteen-pound cat. (T. 63).

Plaintiff described her daily activities to her health care professionals and

discussed these activities during the hearing.  She also completed a function report at

the agency's request. (T. 232-39). Plaintiff reported that she dressed, bathed, and

groomed herself, but "not all at one time" because each one exhausted her. (T. 233,

408). At the hearing, plaintiff reported that she only showered every two or three days

because if she showered she was, "pretty must done for the day." (T. 56-57). Plaintiff

further testified that her husband was usually "around" when she showered to make

sure she did not slip and fall. (T. 63). She testified at her hearing that her husband

helped her dry her hair when her arms hurt. (T. 63, 237). However, in her April 10,

2015 function report, plaintiff stated that she had "no problem" reaching. (T. 237).

Plaintiff testified that she thought that she spent sixteen to eighteen hours a day

lying down. (T. 65). Plaintiff watched television, although she had difficultly following

complex story lines. (T. 60, 408). Plaintiff also testified that she spent three to four

hours a day on the computer using social media, and playing computer games. (T. 60,

236, 408, 415). In her function report, plaintiff stated that she only read "once in

awhile." (T. 236). On October 6, 2014, plaintiff told one of her medical care

professionals that she enjoyed running an eBay store because it gave her "purpose." (T.

366).

Plaintiff spent time with friends and family at her home and talked to them over

the phone. (T. 408, 514). Plaintiff stated that she did not go to the grocery store often

because she was overwhelmed by crowds. (T. 64, 236, 408). Plaintiff further stated that

she did not cook for herself, claiming that she could not follow a recipe due to her

cognitive issues. (T. 57, 62). Plaintiff went out to dinner once a month. (T. 408).

Plaintiff did not clean often, claiming she "maybe just pick[ed] up here and there." (T.

63). Nonetheless, plaintiff testified that on "good days" she folded laundry, emptied or

loaded the dishwasher, and occasionally dusted. (T. 60).

Plaintiff testified that she felt overwhelmed and anxious when she was home and when she went out. (T. 59). According to plaintiff, her anxiety symptoms were amplified when her young grandchildren came to see her. (T. 59). Plaintiff testified that she had a driver's license. (T. 47). However, plaintiff claimed she did not drive often because of her anxiety, and she felt unsafe driving due to her "fibro fog" and her response time. (T. 47, 235).

The ALJ heard testimony from VE Srinivasan. (T. 67-70). The VE testified that plaintiff's Past Relevant Work ("PRW") as a preschool teacher was skilled light work, and her PRW an animal hospital clerk was semiskilled sedentary work. (T. 67). VE further noted that plaintiff's past position as an animal hospital clerk may have been medium work as performed. (*Id.*).

The ALJ asked VE Srinivasan to consider a hypothetical individual of the plaintiff's age and education, who could engage in light work, but who had "postural" limitations. (*Id.*). The ALJ then added the following restrictions: the individual can "frequently balance and stoop," can "occasionally . . . kneel, crouch, and crawl," and can "occasionally . . . climb ramps and stairs." (*Id.*). The individual cannot perform work on "ladders, ropes and scaffolds" and has "environmental limitations." (*Id.*). The individual "cannot perform work around unprotected heights or moving mechanical parts," nor can the individual "operate motorized equipment as part of the job." (T.

67-68). Further, the individual "would require a sit/stand option." (T. 68). The individual "would need to be able to sit for 5 minutes after standing for 25 minutes or stand for 5 minutes after sitting for 25 minutes or stand for 5 minutes after sitting for 25 minutes, but could continue working in either position." (T. 68). The VE determined that, based on the above restrictions, the individual could perform plaintiff's PRW. (*Id*.).

The ALJ also asked the VE to consider the same hypothetical individual, with the same limitations, but this individual could only perform "sedentary work." (*Id*.). The VE stated that this individual would not be able to perform plaintiff's PRW as a preschool teacher. (*Id*.).  The VE further stated that the individual would still be able to work as an animal hospital clerk. (*Id*.).  However, this individual could only perform this job, as sedentary work, not as performed by the plaintiff, which may have required medium exertion. (*Id.*).

The ALJ further asked the VE to consider the same hypothetical individual, who could perform either sedentary or light work, but was only capable of performing simple and routine tasks. (T. 69). The VE stated that, based on the above restrictions, the individual could not perform plaintiff's PRW. (*Id*.).  Additionally, in order to perform any of these jobs, the individual could not be off-task for more than two hours per day, and she could not be absent from work two days per month on a recurring basis. (T. 69-70).

The Commissioner's counsel has adopted the recitation of the facts as stated by the ALJ in his opinion. (Def.'s Br at. 2) (Dkt. No. 12). Rather than reciting the medical evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff and with any modifications as noted in the decision.

## IV.   THE ALJ'S DECISION

The ALJ first found that plaintiff met her insured status through December 31, 2018. (T. 17). Plaintiff had not engaged in substantial gainful activity since her alleged onset date of June 1, 2012. (T. 17). At step two of the sequential evaluation, the ALJ found that plaintiff's degenerative disc disease and fibromyalgia were severe. (T. 18). The ALJ also found that plaintiff's headaches, hypertension, sleep apnea, borderline obesity, anxiety, and depression were not severe. (T. 18-19).

At step three of the evaluation, the ALJ found that plaintiff's severe impairments did not meet or medically equal the severity of any Listed Impairment. (T. 20). In making this determination, the ALJ considered Listing 1.04 (Disorders of the Spine), Listing 14.09D (Inflammatory Arthritis), and considered plaintiff's Fibromyalgia under Social Security Ruling ("SSR") 12-2p. The ALJ found that plaintiff did not provide any "evidence of motor loss accompanied by sensory or reflex loss, or an inability to ambulate effectively," to meet the requirement of Listing 1.04. (*Id*.). The ALJ found that the plaintiff had "no persistent deformity of a major joint resulting in an inability to

ambulate or perform fine and gross movements effectively," for the purposes of Listing 14.09D and SSR 12-2p. (*Id*.). Further, the ALJ found that the medical records did not establish "evidence of any organ or body system dysfunction in the record, or ankylosing spondylitis or marked 'paragraph B' criteria." (*Id*.).

At step four, the ALJ found that plaintiff could perform "light work," with additional restrictions. (T. 20). Plaintiff could "frequently balance and stoop." Plaintiff could "occasionally… kneel, crouch, crawl, and climb ramps and stairs." (T. 21). Plaintiff could not "climb ladders, ropes, and scaffolds." (*Id*.). Plaintiff "must be able to sit for five minutes after standing for 25 minutes, or stand for five minutes after sitting for 25 minutes, but she" could "continue working in either position." (*Id*.). Further, plaintiff could not "work around unprotected heights or moving mechanical parts," nor could plaintiff "operate motorized equipment as part of the job." (*Id*.).

The ALJ also found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however," plaintiff's "statements as to the intensity persistence and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record." (T. 21). The ALJ then determined that plaintiff was able to perform her PRW as a preschool teacher and as an animal hospital clerk, as generally performed. (T. 24-25). Accordingly, the ALJ determined that plaintiff was not disabled from June 1, 2012 through the date of the ALJ's decision. (T. 25).

## V. ISSUE IN CONTENTION

Plaintiff raises the following argument:

(1)     "The Administrative Law Judge committed reversible error by failing to include a limitation on reaching that was supported by substantial evidence of record," contained "within a medical source statement that was given significant weight without explanation for the exclusion." (Pl.'s Br. at 5-9) (Dkt. No. 7).

Defendant argues that the Commissioner's decision is supported by substantial evidence in the record, is based upon the application of correct legal standards, and should be affirmed. (Def.'s Br. at 3; 4-15) (Dkt. No. 12).  For the following reasons, this court agrees with defendant and will affirm the Commissioner.

## VI. RFC

### A. Legal Standards

Residual functional capacity ("RFC") is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's

subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §§

404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999). An

ALJ must specify the functions plaintiff is capable of performing, and may not simply

make conclusory statements regarding a plaintiff's capacities. *(Id.)* (citing, inter alia,

*Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984)). RFC can only be established

when there is substantial evidence of each physical requirement listed in the

regulations. (*Id.*) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)).

The RFC assessment must also include a narrative discussion, describing how the

evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical

evidence. *Trail v. Astrue*, 5:09-CV-1120 (DNH/GHL), 2010 WL 3825629, at *6

(N.D.N.Y. Aug. 17, 2010) (citing SSR 96-8p, 1996 WL 374184, at *7).

### B. Application

The ALJ concluded that plaintiff retained the RFC to perform "light work," with

additional restrictions, including, sit/stand options, limitations on climbing, kneeling,

crouching and crawling, and the inability to operate or work near unprotected

motorized equipment. (T. 20-21). Plaintiff alleges that the ALJ improperly omitted Dr.

Lorensen's finding of a "moderate" reaching restriction, despite giving Dr. Lorensen's

opinion "significant weight." (Pl.'s Br. at 6-8).  Plaintiff argues that the restriction on

reaching should have been included in the RFC and in the hypothetical questions posed

to the VE.  Plaintiff further alleges that Dr. Lorensen's examination, and the record,

generally support a reaching limitation. (*Id*). According to plaintiff, this error was not harmless because reaching is required for her to perform her PRW. (Pl.'s Br. 8-9). Finally, plaintiff argues that the ALJ's reliance on the VE's testimony, that resulted from hypothetical questions mirroring the ALJ's RFC determination, is tainted. (*Id*.)

In reaching the RFC determination, the ALJ gave "significant weight" to the opinion of Elke Lorensen, M.D., who performed a consultative examination of plaintiff on April 28, 2015. (T. 23, 407-10). In Dr. Lorensen's Medical Source Statement of Ability to do Work-Related Activities (physical) ("MSS"), he opined plaintiff had "no gross limitations to sitting, standing, walking, or handling small objects with hands." (T. 410). Dr. Lorensen further stated plaintiff had "moderate restrictions bending, lifting and reaching." (*Id*.) The ALJ acknowledged that, although "Dr. Lorensen did not assess exertional limitations," in light of the plaintiff's "history of fibromyalgia care and the imaging showing mild degenerative disc disease," he found that plaintiff's "overall exertional capability is closer to the light level." (T. 23).

Plaintiff argues that the ALJ failed to provide a reason for omitting from the RFC the portion of Dr. Lorsensen's consultative report, which stated that plaintiff had moderate restrictions in reaching, despite giving his opinion "significant weight." (Pl.'s Br. at 8-9). As a general rule, "ALJ is not obligated to 'reconcile explicitly every conflicting shred of medical testimony.'" *Gecevic v. Sec'y of Health & Human Servs*., 882 F. Supp. 278, 286 (E.D.N.Y. 1995) (quoting *Fiorello v. Heckler*, 725 F.2d 174, 176

(2d Cir. 1983)). While, the ALJ "cannot simply selectively choose evidence in the record that supports his conclusions" *Gecevic*, 882 F. Supp. at 286 (quoting *Fiorello*, 725 F.2d at 176) "[t]here is no absolute bar to crediting only portions of medical source opinions." *Younes v. Colvin*, No. 1:14-CV-170, 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015). *See Pellam v. Astrue*, 508 F. App'x 87, 89 (2d Cir. 2013) (the ALJ properly declined to accept some conclusions in the consultative examiner's opinion that were inconsistent with other evidence of record). However, "when doing so smacks of 'cherry picking' of evidence supporting a finding while rejecting contrary evidence from the same source," an ALJ "must have a sound reason for weighing portions of the same-source opinions differently." *Id*. *See Searles v. Astrue*, No. 09-CV-6117, 2010 WL 2998676, at *4 (W.D.N.Y. July 27, 2010) (case remanded where "the ALJ failed to explain why he ignored portions of an opinion to which he granted "significant weight'").

In this case, the ALJ did not engage in "cherry-picking." Plaintiff argues that the ALJ erred in omitting Dr. Lorensen's "moderate" reaching limitations in the RFC, despite giving Dr. Lorensen's opinion significant weight. However, the plaintiff does not take issue with the ALJ's determination that plaintiff had substantially ***more*** exertional limitations than Dr. Lorensen suggested, and which additional limitations the ALJ did incorporate into the plaintiff's RFC. Dr. Lorensen found that plaintiff had "no gross limitations" in sitting, standing, walking, or handling small objects with her

14

hands. (T. 410). After reviewing the record, the ALJ determined that based on the

medical evidence, plaintiff had more restrictions on sitting, standing, and walking and

incorporated these restrictions to determine that plaintiff could perform only light work,

particularly with respect to plaintiff's need for frequent rests or breaks between sitting,

standing, and walking.[2] (T. 23). Thus, the ALJ did not ignore only favorable findings

by Dr. Lorensen, and instead, engaged in careful analysis of the entire record in making

the RFC determination. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (the

ALJ weighs all the evidence available to render an RFC finding consistent with the

record as a whole).

Plaintiff argues that "[r]eaching is 'required in almost all jobs,' and a reaching

limitation 'may eliminate a large number of occupations a person could otherwise do.'"

*Selian*, 708 F.3d at 422 (quoting SSR 85-15, 1985 WL 56857, at *7). An ALJ must

properly "incorporate" a plaintiff's "non-exertional impairments, which include

difficulty performing the manipulative or postural functions of some work such as

reaching . . . into his RFC determination, and failure to do so generally warrants a

remand." *Rowe v. Colvin*, 166 F. Supp. 3d 234, 239 (N.D.N.Y. 2016).

Assuming that plaintiff has moderate limitations in reaching, there is no error

---

[2] Specifically, the ALJ stated that "Dr. Lorensen did not assess exertional limitations, but in light of the claimant's history of fibromyalgia care and imaging showing mild degenerative disc disease, I believe the claimant's overall exertional capability is *closer to the light level*." (T. 23) (emphasis added). The previous three paragraphs of the ALJ's opinion discussed the objective evidence of plaintiff's impairments, including reference to lumbar spine imaging, fibromyalgia care, and evidence from plaintiff's orthopedic specialist, Dr. Robert Alcuri. (T. 23).

simply because the ALJ failed to "incorporate the limitations by name, provided that the RFC appropriately reflects that limitation." *Gurney v. Colvin*, No. 14-CV- 688S, 2016 WL 805405, at *3 (W.D.N.Y. Mar. 2, 2016). "Moderate" reaching limitations have been found to be consistent with an ability to perform light work. *See id.* ("moderate [reaching] limitations . . . are frequently found to be consistent with an RFC for a *full range* of light work) (collecting cases) (citing inter alia *Harris v. Comm'r of Soc. Sec.*, No. 09-CV-1112, 2011 WL 3652286, at *5 (N.D.N.Y. July 27, 2011) (*Rep't Rec.*), *adopted*, 2011 WL 3652201 (N.D.N.Y. Aug. 17, 2011) (finding "slight to moderate limitations in activities that require lifting, carrying, and reaching . . . consistent with the ALJ's conclusion that Plaintiff could perform light work")). Thus, even assuming that the plaintiff was moderately restricted in her ability to reach, the ALJ's determination that plaintiff was capable of light work, with the additional restrictions that he incorporated into the RFC, is not inconsistent with Dr. Lorensen's opinion that plaintiff was moderately restricted in her ability to reach, even if the ALJ did not specifically include the limitation in his RFC finding.

Even if the ALJ erred in failing to include "moderate" reaching limitations, and as such, failed to provide a proper function-by-function analysis,[3] this would have been harmless error because it would not have changed the outcome of this case. *See Zabala*

---

[3] *See Diakogiannis v. Astrue*, 975 F. Supp. 2d 299, 313-14 (W.D.N.Y. 2013) (the RFC must first identify the individuals functional limitations or restrictions and assess the individual's work-related activities on a function-by-function basis).

*v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (even if the ALJ "improperly excluded evidence, . . . [r]emand is unnecessary . . . '[w]here application of the correct legal standard could lead to only one conclusion.'"); *see also Ortiz v. Colvin*, 298 F. Supp. 3d 581, 589-590 (W.D.N.Y. 2018) (an "ALJ's failure to incorporate [plaintiff's] limitation into his RFC finding was [a] harmless error" that did not require remand because it "would not have changed the ALJ's step five determination"); *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("[W]here application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration.").

Plaintiff argues that Dr. Lorensen's examination, and the record, generally support a reaching limitation, and that the ALJ's failure to account for plaintiff's reaching limitation is not harmless error because this limitation would affect her ability to perform her PRW. (Pl.'s Br at 6-9). There is nothing to suggest that the ALJ did not find that she had a moderate reaching limitation, because, as stated above, an RFC of light work is consistent with moderate reaching limitations. *See Gurney*, 2016 WL 805405, at *4. However, even if the ALJ determined that plaintiff had no reaching limitations, his RFC would still be supported by substantial evidence. Dr. Lorensen's examination findings and the rest of the medical records support the RFC established by the ALJ. Although Dr. Lorensen mentioned a "moderate" reaching limitation, not one other physician or examining medical care professional found that plaintiff had a

problem reaching. In fact, on April 10, 2015, plaintiff herself reported that, while she had a variety of limitations in lifting, standing, walking, sitting, climbing stairs, kneeling, and squatting, she had "***no problem***" reaching. (T. 237) (emphasis added).

Upon examination, Dr. Lorensen indicated that plaintiff exhibited full cervical flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. (T. 409). Plaintiff had no scoliosis, kyphosis or abnormality in her thoracic spine. (*Id.*). Lumbar flexion was 70 degrees, extension 20 degrees, and lateral flexion 30 degrees bilaterally. (*Id.*). Straight Leg Raise Test was negative bilaterally, and she had full range of motion of her elbows, forearms, ankles, and wrists bilaterally. Plaintiff's joints were stable and not tender. (*Id.*). Plaintiff had no redness, heat, swelling or effusion.

Dr. Lorensen was able to identify only six positive trigger points for purposes of the fibromyalgia diagnosis, and plaintiff exhibited full strength in the upper and lower extremities, and had full grip strength. (T. 409-10). During Dr. Lorensen's examination, plaintiff reported that she showered and dressed herself daily. (T. 408). She further reported that she watched television, socialized with friends, played computer games, and went out to dinner once a month. (*Id.*). Dr. Lorensen did note that plaintiff denied cooking, cleaning, doing laundry or shopping. (*Id.*).

In January and August of 2012, Dr. Ramzi Khairallah from Arthritis Health Associates found full ROM in plaintiff's joints, without any soft tissue tenderness or swelling, notwithstanding the 18 out of 18 fibromyalgia tender points. (T. 319, 326-27).

On May 16, 2012, Dr. Khairallah stated that he believed that some of plaintiff's symptomatology was related to deconditioning and "released" her from "disability." (T. 327). He asked plaintiff to increase her physical activity. (T. 327). On December 12, 2013, plaintiff presented for her annual physical examination "with no complaints." (T. 280). She denied any muscular weakness. (*Id.*) Plaintiff has demonstrated full range of motion in the spine and full range of motion bilaterally in the upper and lower extremities. (T. 407-10 (Dr. Lorensen - 4/28/15), 540-41 -Dr. Lisa Dorsey (general physical 6/6/16)).

On June 9, 2016, Dr. Dorsey found plaintiff's motor strength was 5/5 bilaterally in her upper and lower extremities. (T. 541). On February 21, 2013, although plaintiff was experiencing generalized morning stiffness, fatigue and insomnia, she stated that her pain was 3/10, and NP Stoianoff stated that plaintiff's "symptoms of fibromyalgia have much improved. (T. 312). While plaintiff was having a lot of fatigue, it was "possibly due to [the] combination of medications," and they were adjusted. (T. 312). On May 3, 2013, she stated at a medical examination, "I'm the best I've been in two years," and the doctor stated that plaintiff's "fibromyalgia [was] well controlled." (T. 362). On December 6, 2013, she stated she was "overall more stable than a year ago" and was "overall content with meds." (T. 364). On March 19, 2014, plaintiff stated that she was "doing well," even though she had been "having significant myalgias with brain fog." (T. 390). On December 11, 2015, Dr. Rula Hajj-Ali at the Cleveland Clinic

saw plaintiff on a consultative basis for "pain," referred by Dr. Khairallah. (T. 562-65).

Dr. Rula Hajj-Ali agreed with the diagnosis of fibromyalgia, chronic fatigue, and

chronic pain syndrome, lumbar disc disease and osteoarthritis in multiple joints. (T.

564). The doctor recommended that plaintiff engage in low impact aerobic activities

such as "fast walking, biking, swimming, or water aerobics, which should be started in

low increments and accelerated gradually. (T. 564-65). On March 31, 2016, plaintiff

reported a "considerable reduction in the intensity of her pain and improved functional

mobility following her physical therapy treatments."[4] (T. 558).

On May 24, 2016, plaintiff went to the Cleveland Clinic to get treatment for her

headaches. (T. 568-74). Her physical examination showed no gross joint deformities,

and although her cervical range of motion was decreased, there is no indication that

plaintiff had any reaching limitation. In fact, the doctor noted that plaintiff had normal

tone and strength, and that she held her arms away from her sides when walking on her

toes, although the doctor stated that he did not think that it was necessary. (T. 572,

573). On August 10, 2016, plaintiff was examined for a neurology consultation by Dr.

---

[4] Plaintiff's initial physical therapy evaluation was on February 5, 2016. (T. 560-61). The PT assessment stated that plaintiff suffered from knee problems which would benefit from therapy, and one of her long term goals was to acheive 5/5 lower extremity strength. (T. 560). On March 31, 2016, plaintiff was seen by Mark D. Cook, RPT, who evaluated plaintiff and issued a report, after plaintiff had attended various physical therapy sessions. (T. 558-59). PT Cook noted plaintiff's diagnosis from her treating physician as "lumbar degenerative disc disease" and osteoarthritis of the knee. (T. 558). PT Cook stated that plaintiff showed good improvement with physical therapy and would likely benefit from continued treatments in "order to resolve low back and left knee pain, progress mobility exercise, postural and lower extremity exercise to provide pain-free function." (*Id.*) There is no mention of an inability or limitation on plaintiff's ability to reach.

Rabia Rizwana, M.D., Ph.D. (T. 517-19, 575-77 (duplicate)).  Plaintiff reported her neck pain was improved by trigger point injections. (T. 517).  The doctor noted that plaintiff's tone and bulk were normal, she had full strength in bilateral upper and lower extremities, reflexes were symmetric and 2+ in her biceps, triceps, and brachioradialis. (T. 518).  Finger-to-nose and rapid alternating movements were "intact." (T. 518).

There is simply no basis in the record, other than Dr. Lorensen's opinion, to infer any reaching limitation, and certainly no basis to infer any greater limitation that Dr. Lorensen suggested.  Thus, the ALJ's RFC determination is supported by substantial evidence, and at worst, any failure to include a "moderate" reaching limitation in the RFC was harmless error.

## VII.  VE TESTIMONY

### A.    Legal Standards

A "vocational expert's testimony does not constitute substantial evidence where the ALJ asks about a hypothetical claimant whose limitations do not actually mirror those of the [plaintiff]." *Baker v. Berryhill*, No. 17CV8433, 2019 WL 1062110, at *34-35 (S.D.N.Y. Feb. 19, 2019), (*Rep't Rec.*), *adopted*, 2019 WL 1059997 (S.D.N.Y. Mar. 6, 2019).  An ALJ may rely on a VE's testimony regarding a hypothetical if the facts of the hypothetical are based on substantial evidence. *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983), and reflect the limitations and capabilities of the plaintiff, *see Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981).

## B.    Application

Plaintiff argues that the ALJ's reliance on the VE's testimony, that resulted from hypothetical questions mirroring the ALJ's RFC determination, is tainted. (Pl.'s Br. at 8-9). Here, the VE testified that, based on the hypothetical question was capable of performing her past work as a preschool teacher [5] and animal hospital clerk.[6] (T. 69-70). In this case, the ALJ presented hypothetical questions to the VE that mirrored the RFC. (T. 67-70). As explained above, the ALJ's RFC determination was supported by substantial evidence, and any error by the ALJ was harmless. Thus, the ALJ's reliance on the VE's testimony was proper. *See Calabrese v. Astrue*, 358 F. App'x 274, 277 (2d Cir. 2009) (if the content of hypothetical questions posed to a VE expert mirror that of the RFC, and the RFC is supported by substantial evidence, the hypotheticals are "entirely proper").

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the Commissioner's decision is **AFFIRMED** and the complaint is **DISMISSED**, and it is

---

[5] Teacher Preschool DOT Code 092.227-018 can be found at 1991 WL 646897.

[6] Animal Hospital Clerk DOT Code 245.367-018 does not exist, however, the same Title appears in the Dictionary of Occupational Titles at 245.367-010 with the same Exertional Level and SVP. It is assumed that the VE made a clerical error in the number. DOT Code 245.367-010 is available at 1991 WL 672271. Both of plaintiff's past relevant jobs require frequent reaching according to the Dictionary of Occupational Titles companion publication (The Selected Characteristics of Occupations). (T. 67). The ability to reach frequently means that plaintiff must reach one-third to two-thirds of the time. *See, e.g.* DOT Code 092.227-018, 1991 WL 646897; DOT Code 245.367-010, 1991 WL 672271. The VE stated that there were no conflicts with his testimony and this publication. (T. 68-69).

**ORDERED**, that judgment be entered for **DEFENDANT**

Dated: July 26, 2019

Hon. Andrew T. Baxter
U.S. Magistrate Judge